**In re SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION.**

**No. MDL–721.**

United States District Court,
D. Puerto Rico.

Oct. 10, 1989.

Further Order Nov. 22, 1989.

Order on Conference Jan. 2, 1990.

See also, D.C., 129 F.R.D. 409.

Ana Luisa Navarro, Liaison, Plaintiffs' Steering Committee, Hato Rey, P.R., for plaintiff.

Carlos Padin, Defendants' Liaison Counsel, Hato Rey, P.R., for defendant.

COURT MARGIN ORDER NO. 548

ORDER REGARDING THE PRESENTATION OF EVIDENCE VIA SATELLITE TRANSMISSIONS

RAYMOND L. ACOSTA, District Judge.

Before the Court is the plaintiffs (PSC's) Motion Requesting Leave To Telecast Live Testimony Of Witnesses From Various States To The Court In San Juan, docket No. 12557, filed September 7, 1989. Certain defendants have filed their opposition to the PSC's petition. *See* docket No. 12627, filed September 11, 1989. This mat-

ter has also been argued by the parties during the course of the current trial phase of this litigation.

■ The PSC's request is simple but innovative. It wants the Court to order certain witnesses employed and/or otherwise under the control of defendants and who are beyond the 100 mile trial subpoena power of this Court to testify in these proceedings via a satellite hookup between their place of residence and this courtroom.[1] The main purpose of the satellite transmission option is to provide the jury and this Court with live testimony rather than with the droning recitation of countless transcript pages of deposition testimony read by stand-in readers in a boring monotone. The reading of depositions also gives rise to ludicrous objections concerning whether the reader may interpret the tone and mood of the questions and answers and whether the reader may or may not give inflection to certain words or passages. The PSC argues that live testimony as opposed to deposition readings will facilitate more comprehensive factual determinations by the jury as well as help it assess the credibility of witnesses. Defendants counter that the PSC's proposal is "untried, unauthorized, and unworkable." They also accuse the PSC of unreasonable delay and charge that the jury will be confused with a change of process in the middle of trial.

First of all, we are not convinced that the PSC has acted in a dilatory fashion in this matter; it was only a short time ago that the defendants announced that they would not voluntarily produce a large number of witnesses even though that decision automatically precludes them from presenting these particular witnesses in person during their case-in-chief. See Pretrial Order No. 203 (Docket No. 11691, filed June 27, 1989). Nor do we find any merit in the argument that the jury would be confused by the use of satellite transmissions rather than deposition readings, especially when the procedure will only involve a limited number of witnesses and will not preclude the use of deposition evidence altogether in this litigation.

Secondly, the futuristic aspects of the PSC proposal need not be perceived as a threat. It is a well-known aphorism that "professions are the enemy of change".[2] Yet no profession can remain indefinitely sheltered from the maelstrom of modernism that in recent years has completely changed the communications landscape. One need only consider that computers were once thought to be strictly secretarial tools, yet now many lawyers carry their stylish lap-top computers in addition to their briefcases. With this increased acceptance and personalized use of sophisticated technology has come the belated realization that just because some mechanism or process is "untried" does not mean that it should be disregarded; rather, it should be used if it contains at least a well-founded promise of some important benefit and causes little or no prejudice. In short, the use of this type of technology in the courtroom, as with other types already in use,[3] will not create a sort of "brave new world" as feared by defendants. The Court has little doubt that the presentation of live testimony by satellite is a viable, and even refreshing, alternative to the deadening recitation of numerous depositions. It would also be most helpful to the jury in the fulfillment of their sworn duties. After all, the purpose of a trial is precisely to ensure the truth-seeking process which, to a great extent, is based on the demeanor of witnesses. In addition, the use of satellite transmitted testimony avoids the burdens and problems inherent

---

1. Defendants have recently decided not to produce these witnesses voluntarily. See also Fed. R.Civ.P. Rule 45(e)(1).

2. See, e.g., Daniel Boorstin in "The Discoverers".

3. For instance, technology has come into play in the very courtroom where the present trial is being conducted with the use of video equipment to record the proceedings for the benefit

of absent parties; sophisticated sound equipment; television monitors to assist the jury and the parties in examining exhibits along with the witnesses' testimony; still video cameras which enable all parties and the jurors to follow descriptions of demonstrative evidence, and even the procedure for the court reporter to produce a faster and less costly daily transcript is made possible by way of advanced technology.

in the arranging of travel schedules, conflicting obligations, and extended stays in the transferee district because of the uncertainties of trial schedules.

It is important to note that it appears that at least one state court has successfully used this procedure recently. As reported in the March 13, 1989 edition of The National Law Journal, and submitted to the Court by defendants in a supplement to their opposition, *see* docket no. 12704, filed September 26, 1989, a Wisconsin Circuit Court judge allowed the use of the satellite transmitted testimony of witnesses located in London.

Finally, defendants' main contention is that this court lacks any authority whatsoever to order witnesses outside this jurisdiction to submit themselves to questioning via satellite. Although Rule 45(e)(1) does not explicitly permit this approach, neither does it expressly prohibit it. We find compelling the reasoning used by U.S. District Judge William Browning when he allowed the use of satellites to examine distant witnesses in MDL-551 (*In re Washington Public Power Supply System Securities Litigation*).[4]

Speaking to the scope of Rule 45(e)(1), Judge Browning correctly asserted that the Rule simply "restricts the reach of subpoenas to prevent undue inconvenience to witnesses *not* to confer advantages on parties." Order dated August 9, 1988 at 5. (Emphasis in the original. Citing Notes of Advisory Committee re: 1980 Amendment to Rule 45(e)(1).) We echo Judge Browning's conclusions that a court has authority to ensure that a jury is provided with "the best and most complete basis to evaluate evidence and witness credibility." *Id.* at 5. In supporting the exercise of his discretion in employing the satellite communication procedure, Judge Browning listed, *inter alia*, the following factors: (1) the control

defendants had over the witnesses in question; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witnesses, that the defendants were seeking by not producing the witnesses voluntarily; (4) the lack of any true prejudice to the defendants; and (5) the flexibility needed to manage a complex multi-district litigation. These factors and the rationale of the MDL-551 order are all directly applicable to the case at bar. We can only conclude that the satellite telecasts will provide a myriad of benefits to the jury and this Court which far outweigh the tactical advantage that defendants may lose from the implementation of this procedure. Principles of fairness and efficiency weigh heavily on the side of plaintiffs' request. The Court, however, is not entirely satisfied with the procedure set forth by the PSC[5] and would like more information from the PSC on the possibility of having two-way transmissions and for the parties to examine the protocol fashioned by Judge Browning regarding satellite transmissions[6] and to submit any proposals on the subject they would like the Court to consider no later than *October 18, 1989.*

In conclusion, the Court favors entering the new age of communications technology with the use of satellite—transmitted "live" testimony subject to the procedure to be established by the Court after having considered the recommendations filed by the parties.

IT IS SO ORDERED.

### ORDER NO. 224

### FURTHER ORDER AND PROTOCOL FOR SATELLITE TRANSMISSIONS

In Court Margin Order No. 548, filed on October 10, 1989 (docket No. 12859), p. 424 the Court granted the Plaintiffs Steering Committee's (PSC) request to present evi-

---

4. Admittedly, Judge Browning's order became moot when the parties settled before trial, but the purpose and substance of that order still carry the convincing weight of wholesome logic.

5. The Court advises the parties that any expense related to these transmissions will be entirely borne by the PSC.

6. A copy of the relevant portions of that protocol is attached to the MDL-551 order and can be found in the attachments to the supplement filed by defendants (docket No. 12704).

dence by way of satellite transmissions subject to the issuance of the pertinent protocol setting forth the particular provisions to be used for implementing this innovative trial technique. Before we go into the specific protocol provisions, the parties are hereby advised as follows.

Neither this Order nor Court Margin Order No. 548 in any way limit plaintiffs' presentation via satellite to three (3) witnesses only from each defendant as provided in the Amended Pretrial Order No. 181, filed June 21, 1989 (docket No. 11264). In this regard defendants' position at note 2 of Defendants' Comments Pursuant to CMO 548 Regarding Satellite Transmission of Trial Testimony, filed October 18, 1989 (docket No. 12911) is rejected. The numerical limitation imposed therein responded to different needs and circumstances.

Witnesses who testify by satellite transmission shall only be allowed to be recalled to testify (be it on the issue of intervening cause or otherwise) either by satellite transmission, or by way of deposition. (See paragraph 13 of the Protocol for Satellite Transmissions, *infra*).

■ The Court having considered the proposals submitted both by the PSC[1] and the Defendants[2] finds that the transmissions shall be made under the following terms and conditions.

## PROTOCOL FOR SATELLITE TRANSMISSIONS

1. *Two-way audio/visual transmissions.* Two-way audio and visual transmissions shall be provided for each witness.

2. *Color transmissions.* Transmissions both to and from the place where the witness testifies shall be in color.

3. *Persons present with witnesses.* Spectators and counsel will not be allowed in the room where the witness testifies. Present with the witness shall be a court-

room deputy clerk of the United District Court from where the transmission originates, a court reporter, if necessary, and any technical staff needed for the satellite transmission.

The courtroom deputy clerk will administer the oath to the witness, hand him any documents which the witness is asked to refer to during his/her testimony and perform such other duties and functions as a courtroom deputy clerk would normally perform.

4. *Documents to be shown to the witness.* The party calling the witness shall furnish the Document Depository at least *seven (7) working days* prior to the transmission a list of all documents to which the witness will be asked in direct examination. The Document Depository will provide the courtroom deputy clerk at the district where the witness will appear copy of all such documents with sufficient time in advance for these to be available when the testimony is scheduled to commence.

Any documents needed for cross-examination or redirect which are not available at the site of the testimony when cross-examination commences shall be shown to the witness via satellite or copy thereof transmitted by telecopier.

5. *Telephone and telecopier.* There shall be available in the courtroom, for coordinating any necessary technologic aspects or any other matters that may arise during the satellite transmission, the following telephone number: (809) 766–5448. The party calling the witness shall provide a headset/headphones compatible with the existing telephone equipment. A telecopier capable of using the same telephone number shall also be placed in the courtroom by the party calling the witness.

There shall also be available in the room where the witness is to give his testimony a

---

1. PSC's Informative Motion Suggesting the Protocol and Procedure to be Used For the Presentation of Evidence Via Satellite, filed October 18, 1989, and Motion to Supplement PSC Informative Motion Suggesting Protocol For the Presentation of Evidence Via Satellite By Addition of Attachment: Judge Browning's Protocol,

filed October 18, 1989 (docket Nos. 12909 and 12919, respectively).

2. Defendants' Comments Pursuant to CMO 548 Regarding Satellite Transmission of Trial Testimony, filed on October 18, 1989 (docket No. 12911).

telephone with a headset/headphones compatible with the equipment and a telecopier. It shall be the responsibility of the party calling the witness to provide this equipment, to ensure it is in place and in working condition in time for the transmission and to pay all expenses related to its use.

The party calling the witness shall advise the Court of the number(s) of the telephone and telecopier (if different) to be used in the district where the witness is to appear. This shall be done no later than *fifteen (15) calendar days* before the satellite transmission is scheduled to commence.

6. *Additional Equipment.* In addition to the technical equipment needed for the transmission to be carried out, the party calling the witness shall also provide the following, at its own expense.

a. *Courtroom in Puerto Rico.*

1. In addition to the existing monitors, an IN monitor and an OUT monitor from and to the location where the witness is present.

2. A screen to be placed on the witness stand where the witness would sit.

3. In addition to the existing cameras and monitors, one remote control camera to be placed on the witness stand focusing on the questioning attorney and another focusing on the presiding judge, each one with its corresponding monitor.

4. Switcher(s) for the additional cameras.

b. *Room where witness is present.*

1. Monitor for the witness to see the pertinent persons(s), documents and/or exhibits in the courtroom.

2. Adequate sound for the witness to hear any matters originating in Puerto Rico including headphones if necessary.

7. *Coordinating technical matters in this district.* Any coordination on technical matters needed for the courtroom in Puerto Rico shall be made through Mr. Jaime Sotomayor, this Court's audio and video technician.

8. *Coordinating with other district(s).* The party calling the witness shall advise this Court, at least *fifteen (15) calendar days* prior to commencing each satellite transmission, the address in each district where the transmission will be originated and the intended date(s) for each transmission.

It shall be the responsibility of the party calling the witness to coordinate in those other district(s) all necessary personnel and logistical matters to allow for a timely and smooth transmission. This includes securing the attendance of the courtroom deputy clerk, court reporter if necessary and ensuring all equipment is in place and in working condition prior to the transmission.

9. *Safeguarding transmission.* No person shall make or allow to be made any recording/videotape or copy of a recording/videotape of the satellite transmission except by written order of this Court in which case such recording/videotape made shall be the sole property of the Court. Necessary measures (encoding or scrambling) shall be taken by the party calling the witness to ensure that persons other than those in the courtroom are not able to watch, hear, or otherwise monitor the satellite transmission. Implementation of effective prophylactic measures to ensure this are a condition for allowing the satellite transmissions.

10. *Cost.* The entire cost of the procedures authorized herein, the necessary technical equipment as well as all logistical arrangements attendant to these procedures shall be borne by the party calling the witness. This includes any expenses associated with necessary delays or adjournments and those warranted to complete cross-examination; provided, however, that any abuse of cross-examination, including repetitive or cumulative questioning, or any unnecessary prolonging of the testimony by repetitive, long or frivolous objections will result in allocation of costs due to delays to the party responsible.

11. *Cancellation of testimony.* In the event of cancellation of the testimony of any witness, the cost associated therewith shall be borne by the party calling the witness. If the cancellation was avoidable or resulted from matters within the cancel-

ling party's control, the calling party shall bear the cost. Should the witness not be available to testify for a valid reason, the party having control over the witness shall advise the party calling the witness immediately or else the cancelling party will bear all costs associated with the cancellation.

12. *Subpoena and option to testify in Puerto Rico.* Any party seeking to compel the testimony of any witness pursuant to the procedures set forth herein shall serve upon the witness a subpoena at least *fifteen (15) calendar days* in advance of the intended transmission.

A witness subpoenaed to testify by way of a satellite transmission may elect to testify instead at trial in Puerto Rico in which case all expenses related to such attendance shall be borne by the party calling the witness. This option, however, must be notified to the calling party at least *seven (7) calendar days* in advance of the date for the transmission in which case the calling party may either decline the option or the party having control over the witness will bear the cost of any expenses related to the aborted satellite transmission if these could not be avoided, e.g., pre-production costs.

13. *Recalling of witnesses.* A witness who testifies via satellite will not be allowed to subsequently appear in person at trial. His/her subsequent testimony will be either by way of satellite transmission or deposition. In the event it is by way of satellite transmission, the calling party shall bear all associated expenses.

IT IS SO ORDERED.

### ORDER NO. 230
### IN THE MATTER OF JANUARY 10, 1990 CONFERENCE RE: SATELLITE TRANSMISSIONS

On December 19, 1989 [1] the Court advised the parties that the particular technical details and procedures to be utilized for the testimony transmitted via satellite would be discussed at a conference scheduled for January 10, 1990 at 10:00 a.m. In order to expedite matters, the Court has prepared a summary of the procedure to be utilized. The parties shall review it and submit any proposed additions or modifications no later than *January 9, 1990 at 12:00 noon.* Any doubts shall be discussed during the January 10, 1990 conference.

IT IS SO ORDERED.

### APPENDIX TO ORDER NO. 230
### PROCEDURE FOR SATELLITE TRANSMISSION

I. COURTROOM IN PUERTO RICO

  A. *Court and parties*—places as usual

  B. *Witness*—

  1. Replaced by 30–inch screen on witness stand ("witness screen").

  2. Witness screen facing podium and jury box.

  3. Full torso frontal image on *witness screen at all times.*

  4. Witness will be seen on *all monitor screens (including jury box and public area) during his testimony* to ensure all present have proper view.

  5. Admitted exhibits and evidence shown via satellite to the witness (pending ruling on admissibility) will be shown on all courtroom screens with the exception of the image on the witness stand, i.e., the witness will be displayed on the witness screen at all times.

  C. *Questioning attorney*—

  1. Will address screen as if witness were on stand.

  2. Amended Pretrial Order No. 181 ... and other pertinent Orders apply, i.e., face witness, stand behind podium, Nachman rule, etc.

  D. *Side bars and objections*—

  1. When side bar is allowed by the Court, the jury's sound will be automatically cut off but not the sound to the place of origin of the transmission so that the studio courtroom clerk can follow the arguments and the Court's subsequent ruling.

**1.** *See* Order No. 229 (docket No. 13398, filed December 18, 1989).

2. The witness *hears all objections unless instructed by the Court, pursuant to a party's request, to use the headphones.* (He remains on witness screen and studio courtroom clerk will advise him when to take them off.)

## II. LOCATION WHERE TRANSMISSION IS ORIGINATING FROM

A. The witness will sit facing the camera.

B. A monitor will be placed in front of the witness where he will see the courtroom proceedings as if he were sitting in the witness stand.

C. During questioning the witness will have a full view of the attorney at the podium.

D. During objections the witness will see a view of the courtroom well focusing on each attorney addressing the Court or the judge when speaking.

E. Due to technical reasons the monitor should not be "blacked out" (ATT may believe that signal is off and that there is a problem with the transmission). Therefore, *should there be a need for the witness not to look into his monitor,* the Judge will instruct the witness not to look/face the monitor and the courtroom clerk at the studio shall so be advised to ensure the witness complies.

F. The witness will see the judge in the monitor whenever the presiding judge addresses him, i.e., instruct or question. (Judge must address camera located over his monitor.)

G. Documents available at the studio (listed by PSC in agenda) will be handed to witness by courtroom clerk in studio. Other documents or evidence will be shown to the witness on the screen or sent by telecopier.

2. An hour or longer.

## III. MISCELLANEOUS

A. Identify for record who is present with the witness before he starts to testify. (Scan area with camera)

B. Location of studio courtroom clerk vis-a-vis camera and monitor at studio.

C. Advise the parties, the jury and the witness that there is a slight delay of seconds between questions and answers. Witness must wait for the objections.

D. Breaks—will only be allowed for emergencies. In the event of an emergency break the witness will remain in the room in the presence of the studio deputy clerk at all times without communication to or from any person or other source. If it is an extended break [2] the witness will be permitted to go to the rest room and be provided with lunch.

E. Instruct witness not to talk to counsel during breaks.

F. Duties of studio courtroom clerk.

G. Video recording at studio not allowed; only in Puerto Rico.

H. Court reporter in Puerto Rico—official record.