689 So.2d 400 (1997)
David HARRELL, Appellant,
v.
The STATE of Florida, Appellee.
No. 95-1984.
District Court of Appeal of Florida, Third District.
March 5, 1997.
*401 Bennett H. Brummer, Public Defender, and Donald Tunnage, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Fleur J. Lobree, Assistant Attorney General, for appellee.
Before NESBITT and GERSTEN, JJ., and BARKDULL, Senior Judge.
GERSTEN, Judge.
Appellant, David Harrell ("defendant"), appeals his conviction, claiming violation of his constitutional rights under the Confrontation Clause of the Sixth Amendment. We affirm because the procedures used in admitting live satellite testimony of two material witnesses residing in Buenos Aires, Argentina adequately preserved the defendant's Sixth Amendment rights.
The admission of material witnesses' testimony by satellite explores a panoply of issues not contemplated by our Founding Fathers. For example, with current technology, we could conduct satellite trials in a virtual[1] courtroom, while the jury deliberates in a secure cyber chat room. Unfortunately, the Constitution does not address this specific issue, but its timeless language, having survived the Industrial Revolution and other technological revolutions, must apply to all judicial proceedings.[2] Our courts, however, must integrate procedural rules with the techno-evolutionary reality beyond the insulated stone walls of the courthouse. We wholeheartedly embrace the concept of satellite testimony, because it enhances the efficiency of our courts.

I. FACTS
The victims in this case are a married couple who are residents of Argentina and were vacationing in Florida. While attempting to return their rental car, they got lost, and were robbed by a man purporting to offer them directions. Prior to being robbed, the couple handed the man a map which allowed him to reach inside the car and grab their belongings.
Before returning to Argentina, the wife identified the defendant in a photographic line-up and he was subsequently arrested. After booking him, the police discovered that the defendant's fingerprints matched the prints lifted from the map. After pleading not guilty to robbery, burglary, and assault and battery, the defendant filed a speedy trial demand. Thereafter, the State moved to allow production of material witnesses by satellite transmission.
At a pre-trial hearing, the State proffered that the victims were unavailable, because one witness suffered from cancer, both witnesses resided in Buenos Aires, Argentina, *402 and both were unwilling to return to Miami, Florida. Prosecutors made five-to-ten phone calls to persuade the witnesses to return to the United States, but to no avail. The State argued that it would be futile to serve the witnesses, because they resided beyond the jurisdiction of the court.
To remedy this problem, the State suggested a procedure in which the parties would be visible to one another through satellite testimony, where questions would be posed and answered contemporaneously. The transmission was compared to a talk-show satellite interview between people in different countries.
Defense counsel objected to the asserted unavailability and requested that the State provide evidence of the witness's cancer. The State, however, did not provide any evidence of the illness. The trial court determined that the satellite testimony was admissible as in-court testimony. Furthermore, the trial court determined that the trial must go forward in deference to the defendant's speedy trial demand.
The court developed the following procedural guidelines for the satellite testimony: (1) The defendant, counsel, judge, and jury were to be in the same room during the transmission; (2) The testimony in Argentina was to be simultaneously broadcast to the defendant in Miami; (3) The witnesses were to see the inquiring attorney and defendant at all times during the proceedings; (4) The deputy clerk in Miami was to administer an oath upon the witnesses in Argentina in the presence of the jury, judge, interpreter, clerk, and any other necessary court personnel; (5) The State stipulated that it would not attempt to have the testifying witness make an in-court identification of the defendant.
Two screens and two cameras were in the courtroom. One camera filmed the jury, and another filmed the remaining people in the courtroom, with the exception of the judge. Meanwhile, in Argentina, a screen and camera allowed the defendant in Miami and the witnesses in Argentina to observe each other.
At trial, minor technical difficulties developed which prevented the audio and video from operating simultaneously. At the close of the first witness's testimony, the judge agreed with defense counsel that the audio transmission was not synchronized with the witness's lip movement for a short period of time. Subsequently, during one witness's testimony, defense counsel objected because the witness glanced to the right of the camera. The trial court remedied the objection by ordering the camera to focus on both the witness and the in-room satellite technician. The jury convicted the defendant and the trial court sentenced the defendant. The defendant appeals his conviction.

II. HEARSAY
We first address the appellant's contention that the satellite testimony is hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," and is excludable because of its unreliability. § 90.801(1)(c), Fla. Stat. (1995). We find the satellite testimony reliable and admissible, because it is not hearsay testimony.
The satellite testimony is admissible, because it was offered in-court and the declarant was subject to cross-examination. The hearsay rule generally applies only to an out-of-court declarant who cannot be cross-examined at the time the testimony is given. See Anderson v. United States, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); Topping v. People, 793 P.2d 1168 (Colo.1990)(defense cross-examined witness by telephone); Michael H. Graham, Handbook of Federal Evidence, § 801.1 (4th ed. 1996).
Here, the testimony was given, through the assistance of an official interpreter, in the presence of the judge, jury, defendant, counsel, clerk, and court reporter. Even though the witnesses' bodies were not physically in the courtroom, their testimony was nevertheless available. See Mason v. United States, 408 F.2d 903 (10th Cir.1969), cert. denied, 400 U.S. 993, 91 S.Ct. 462, 27 L.Ed.2d 441 (1971); Jori K. Mandelman, Comment, Telephonic Testimony: Talking with the Experts, 29 U.C. Davis L.Rev. 413 (1996); Ronald L. Carlson et al., Evidence in *403 the Nineties 152 (3d ed. 1991); McCormick, Evidence § 253 at 130-31 (4th ed. 1992)(witnesses' testimony may be unavailable when they are on the witness stand because they are incompetent).
The reliability of the testimony is assured by the presence of an oath or affirmation. See Lombardi v. Flaming Fountain, Inc., 327 So.2d 39 (Fla. 2d DCA 1976). The defendant argues that the oath administered by the Florida clerk did not "subject the witnesses to perjury charges." We disagree and find that the manner of administering the oath was binding.
Oaths are binding if they convey the seriousness of the proceeding to the witness and assure the truthfulness of the testimony.[3]See § 90.605, Fla. Stat. (1995); Fed.R.Evid. 603. Moreover, courts have upheld the admissibility of depositions taken without an oath or affirmation in foreign countries which were subsequently used against criminal defendants in the United States. See, e.g., United States v. Casamento, 887 F.2d 1141 (2d Cir.1989), cert. denied, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990); United States v. Salim, 855 F.2d 944 (2d Cir.1988).
Further, the testimony is reliable because it was not transferred orally along a chain of people. The witnesses spoke directly to the jury, allowing the jury to observe the witnesses' demeanor. Moreover, the defendant had the opportunity to cross-examine the witnesses. Therefore, we conclude that satellite testimony is not hearsay because the witnesses spoke directly to the jury and the defendant in the courtroom.

III. CONFRONTATION CLAUSE
We next turn to whether the satellite testimony violated the Confrontation Clause of the Sixth Amendment, which guarantees criminal defendants the right to confront and cross-examine adverse witnesses. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."); Art. I, § 16, Fla. Const. See Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)(the right to confront one's accusers is fundamental and is applicable to the states through the fourteenth amendment).
The Confrontation Clause requires the defendant to cross-examine the adverse witness face-to-face, thereby permitting the finder of fact to evaluate the witness's credibility. Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); Delaware v. Fensterer, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985); Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970)(plurality opinion).
While it is well established that the right to confront one's accusers is a fundamental right, it is not an absolute right. Craig, 497 U.S. at 836, 110 S.Ct. at 3158-59 (stating that if the right to confrontation were absolute it would nullify most of the hearsay exceptions); Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895); State v. Ford, 626 So.2d 1338 (Fla.1993). The United States Supreme Court does not require actual face-to-face testimony in all trials. Testimony is admissible as long as it contains the essential components of face-to-face confrontation: testimony under oath, cross-examination, and the opportunity to observe the witness's demeanor while testifying. Craig, 497 U.S. at 851, 110 S.Ct. at 3166-67; California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The Supreme Court cautioned that its preference for face-to-face confrontation "must occasionally give way to considerations of public policy and the necessities of the case," Craig, 497 U.S. at 849, 110 S.Ct. at 3165 (quoting Mattox, 156 U.S. at 243, 15 S.Ct. at 339-40). See Ohio v. Roberts, 448 U.S. 56, 56, 100 S.Ct. 2531, 2533-34, 65 L.Ed.2d 597 (1980).
*404 The most notable exception recognized by the United States Supreme Court and the Supreme Court of Florida is the use of videotaped and closed-circuit testimony of psychologically vulnerable witnesses, such as children, in sexual abuse cases. See Craig, 497 U.S. at 836, 110 S.Ct. at 3158-59; Glendening v. State, 536 So.2d 212 (Fla.1988), cert. denied, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989). Specifically, Craig held that where the denial of face-to-face confrontation is necessary to further an important public policy, and "the reliability of the testimony is otherwise assured," the criminal defendant's right to confrontation is sufficiently vindicated. 497 U.S. at 854-57, 110 S.Ct. at 3168-70 (holding testimony reliable even though actual face-to-face confrontation element missing).
Here, the use of video satellite testimony at trial did not violate the Confrontation Clause, because satellite testimony meets the face-to-face element. In this case, the witnesses were in the courtroom in a virtual sense.[4] Satellite testimony allowed the defendant and witnesses to interact, if only in two dimensional space. Defense counsel had the opportunity to, and did, contemporaneously cross-examine the witness. Furthermore, the defendant, judge, and the trier of fact observed the demeanor of the witness while testifying. The presence of "these elements of confrontationoath, cross-examination, and observation of witness' demeanor adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." Craig, 497 U.S. at 851, 110 S.Ct. at 3166.
Florida courts have sanctioned the use of audiovisual devices for first appearances and arraignments because they save time and expense, while preserving a defendant's rights.[5]See Fla. R.Crim. P. 3.130; Fla. R.Crim. P. 3.160. The Supreme Court of Florida noted that "[a]s the population grows, with attendant multiple places of confinement and courthouses, the use of audiovisual transmissions can enhance the efficiency of the courts," so long as the rights of the accused are protected. In re Rule 3.160(a), Florida Rules of Criminal Procedure, 528 So.2d 1179 (Fla.1988). We conclude that use of satellite testimony enhances the efficiency of our legal system.

IV. PUBLIC POLICY CONSIDERATIONS
Actual face-to-face confrontation is not an absolute right. Exceptions to the right are permissible where to do so furthers an important public policy. See Coy v. Iowa, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). Thus, a trial court in a criminal case may employ new procedures without precedent if the procedure furthers an important public policy interest. Ford, 626 So.2d at 1340-45; Hernandez v. State, 597 So.2d 408 (Fla. 3d DCA 1992).
In the context of satellite testimony, we note two of several important public policies which are advanced by the use of such a procedure. First, cost, inconvenience, and travel time are reduced and/or eliminated, thereby promoting efficient use of limited resources. Efficient allocation of resources within the criminal justice system maintains the balance between the defendant's rights and the competing interests of society to protect itself. See Mattox, 156 U.S. at 243, 15 S.Ct. at 339-40 (public policy considerations are sometimes more important than constitutional provisions that protect rights of defendants). Second, deterring violence against foreign tourists is promoted, by making it easier for tourists to testify. See Government of Virgin Islands v. Aquino, 378 F.2d 540, 551-52 (3d Cir.1967). These important policy considerations further demonstrate *405 that the defendant's constitutional rights were not derogated by the use of satellite testimony.

V. SATELLITE TESTIMONY PROTOCOL
We commend the trial court's attempt to safeguard the defendant's constitutional rights and we agree that procedures need to be established to preserve such rights, especially in the criminal context. We are concerned that one witness glanced to the right of the camera, and by the delay in the audio portion of the transmission. However, the trial judge remedied this problem by ordering the camera pulled back for a wider view to include both the satellite technician and the witness. After reviewing the videotape of the transmission, we find no suggestion of prejudice or impropriety by the witness glancing right.
Again, after reviewing the videotape, we conclude that the jurors were able to determine the credibility and demeanor of the witnesses testifying, even during the brief period when the transmission was not perfectly synchronized.
We determine these minor problems to be harmless error. In State v. DiGuilio, 491 So.2d 1129, 1134 (Fla.1986), the Supreme Court of Florida stated "that constitutional errors, with rare exceptions, are subject to harmless error analysis." See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Additionally, the United States Supreme Court and the Supreme Court of Florida have held that violations of the Confrontation Clause are subject to a harmless error analysis. Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); Coy v. Iowa, 487 U.S. at 1012, 108 S.Ct. at 2798-99; Hopkins v. State, 632 So.2d 1372 (Fla.1994); State v. Clark, 614 So.2d 453 (Fla.1992).
Applying a harmless error analysis, we find that the Argentinean witnesses corroborated the testimony of each other and the police officers. The most damaging evidence presented to the jury was the map that the victims handed to the defendant. The defendant's fingerprints matched the prints lifted from the map, thus placing the defendant at the crime scene. Additionally, the witnesses accurately described the defendant's car which they had followed for a few minutes. Thus, we determine that the satellite transmission did not affect the jury's decision beyond a reasonable doubt.
Recognizing that the transmission was not absolutely perfect, we suggest adopting the procedures developed in the case of In re San Juan Dupont Plaza Hotel Fire Litigation, 129 F.R.D. 424 (D.P.R.1989), which successfully used live satellite testimony in civil litigation. The district court's order laid out a detailed protocol and procedure for introducing evidence by satellite to preserve the constitutional rights of the parties. We find the district court's protocol highly instructive. 129 F.R.D. at 427-29.[6]
While not an exhaustive list, the following suggested procedures highlight some of the requirements that future satellite transmissions should follow to preserve the defendant's constitutional rights.[7] First, a court official from the jurisdiction holding the trial, such as a clerk authorized to administer oaths, a court reporter, and any technical staff needed for the transmission, should be the only people authorized to be present in the room where the witness is testifying. The court official should administer the oath and hand the witness any documents requested by the attorneys or the court.
Second, two-way audio and visual transmissions should be provided for each witness in color. "IN" monitors and "OUT" monitors from and to the location of the witness should be in the courtroom. Video screens should be placed on the witness stand. One camera should be focused on the defendant and another camera should be focused on the witness at all times. A third camera should focus on the questioning attorney and a fourth should focus on the presiding judge. Each camera should transmit to its corresponding monitor.
*406 Finally, the transmission should be scrambled to prevent any interference or interception of the testimony, and descrambled in the courtroom. The party calling the witness should ensure that persons other than those in the courtroom are not able to watch, listen or otherwise monitor the satellite testimony.

VI. CONCLUSION
We recognize that our decision will not be the last word in this evolutionary technological leap. We hope, however, that it will serve as a launching pad into this uncharted frontier. In conclusion, we find that satellite testimony is not hearsay because it is the equivalent of live in-court testimony. We affirm, finding that the procedures used during the satellite transmission did not compromise the defendant's constitutional rights. Finally, we certify the following question as one of great public importance:
DOES THE ADMISSION OF TRIAL TESTIMONY THROUGH THE USE OF A LIVE SATELLITE TRANSMISSION VIOLATE THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, OR ARTICLE I, SECTION 16 OF THE FLORIDA CONSTITUTION, WHERE A WITNESS RESIDES IN A FOREIGN COUNTRY AND IS UNABLE TO APPEAR IN COURT?
Affirmed; question certified.

APPENDIX
The following protocol is taken from In re San Juan Dupont Plaza Hotel Fire Litigation, 129 F.R.D. 424 (D.P.R.1989).

PROTOCOL FOR SATELLITE TRANSMISSIONS
1. Two-way audio/visual transmissions. Two-way audio and visual transmissions shall be provided for each witness.
2. Color transmissions. Transmissions both to and from the place where the witness testifies shall be in color.
3. Persons present with witnesses. Spectators and counsel will not be allowed in the room where the witness testifies. Present with the witness shall be a courtroom deputy clerk of the United [sic] District Court from where the transmission originates, a court reporter, if necessary, and any technical staff needed for the satellite transmission.
The courtroom deputy clerk will administer the oath to the witness, hand him any documents which the witness is asked to refer to during his/her testimony and perform such other duties and functions as a courtroom deputy clerk would normally perform.
4. Documents to be shown to the witness. The party calling the witness shall furnish the Document Depository at least seven (7) working days prior to the transmission a list of all documents to which the witness will be asked in direct examination. The Document Depository will provide the courtroom deputy clerk at the district where the witness will appear copy [sic] of all such documents with sufficient time in advance for these to be available when the testimony is scheduled to commence.
Any documents needed for cross-examination or redirect which are not available at the site of the testimony when cross-examination commences shall be shown to the witness via satellite or copy thereof transmitted by telecopier.
5. Telephone and telecopier. There shall be available in the courtroom, for coordinating any necessary technologic aspects or any other matters that may arise during the satellite transmission, the following telephone number: (809) 766-5448. The party calling the witness shall provide a headset/headphones compatible with the existing telephone equipment. A telecopier capable of using the same telephone number shall also be placed in the courtroom by the party calling the witness.
There shall also be available in the room where the witness is to give his testimony a telephone with a headset/headphones compatible with the equipment and a telecopier. It shall be the responsibility of the party calling the witness to provide this equipment, to ensure it is in place and in working condition in time for the transmission and to pay all expenses related to its use.
*407 The party calling the witness shall advise the Court of the number(s) of the telephone and telecopier (if different) to be used in the district where the witness is to appear. This shall be done no later than fifteen (15) calendar days before the satellite transmission is scheduled to commence.
6. Additional Equipment. In addition to the technical equipment needed for the transmission to be carried out, the party calling the witness shall also provide the following, at its own expense.

a. Courtroom in Puerto Rico.

1. In addition to the existing monitors, an IN monitor and an OUT monitor from and to the location where the witness is present.
2. A screen to be placed on the witness stand where the witness would sit.
3. In addition to the existing cameras and monitors, one remote control camera to be placed on the witness stand focusing on the questioning attorney and another focusing on the presiding judge, each one with its corresponding monitor.
4. Switcher(s) for the additional cameras.

b. Room where witness is present.

1. Monitor for the witness to see the pertinent persons(s), documents and/or exhibits in the courtroom.
2. Adequate sound for the witness to hear any matters originating in Puerto Rico including headphones if necessary.
7. Coordinating technical matters in this district. Any coordination on technical matters needed for the courtroom in Puerto Rico shall be made through Mr. Jaime Sotomayor, this Court's audio and video technician.
8. Coordinating with other district(s). The party calling the witness shall advise this Court, at least fifteen (15) calendar days prior to commencing each satellite transmission, the address in each district where the transmission will be originated and the intended date(s) for each transmission.
It shall be the responsibility of the party calling the witness to coordinate in those other district(s) all necessary personnel and logistical matters to allow for a timely and smooth transmission. This includes securing the attendance of the courtroom deputy clerk, court reporter if necessary and ensuring all equipment is in place and in working condition prior to the transmission.
9. Safeguarding transmission. No person shall make or allow to be made any recording/videotape or copy of a recording/videotape of the satellite transmission except by written order of this Court in which case such recording/videotape made shall be the sole property of the Court. Necessary measures (encoding or scrambling) shall be taken by the party calling the witness to ensure that persons other than those in the courtroom are not able to watch, hear, or otherwise monitor the satellite transmission. Implementation of effective prophylactic measures to ensure this are a condition for allowing the satellite transmissions.
10. Cost. The entire cost of the procedures authorized herein, the necessary technical equipment as well as all logistical arrangements attendant to these procedures shall be borne by the party calling the witness. This includes any expenses associated with necessary delays or adjournments and those warranted to complete cross-examination; provided, however, that any abuse of cross-examination, including repetitive or cumulative questioning, or any unnecessary prolonging of the testimony by repetitive, long or frivolous objections will result in allocation of costs due to delays to the party responsible.
11. Cancellation of testimony. In the event of cancellation of the testimony of any witness, the cost associated therewith shall be borne by the party calling the witness. If the cancellation was avoidable or resulted from matters within the cancelling party's control, the calling party shall bear the cost. Should the witness not be available to testify for a valid reason, the party having control over the witness shall advise the party calling the witness immediately or else the cancelling party will bear all costs associated with the cancellation.
12. Subpoena and option to testify in Puerto Rico. Any party seeking to compel *408 the testimony of any witness pursuant to the procedures set forth herein shall serve upon the witness a subpoena at least fifteen (15) calendar days in advance of the intended transmission.
A witness subpoenaed to testify by way of a satellite transmission may elect to testify instead at trial in Puerto Rico in which case all expenses related to such attendance shall be borne by the party calling the witness. This option, however, must be notified to the calling party at least seven (7) calendar days in advance of the date for the transmission in which case the calling party may either decline the option or the party having control over the witness will bear the cost of any expenses related to the aborted satellite transmission if these could not be avoided, e.g., pre-production costs.
13. Recalling of witnesses. A witness who testifies via satellite will not be allowed to subsequently appear in person at trial. His/her subsequent testimony will be either by way of satellite transmission or deposition. In the event it is by way of satellite transmission, the calling party shall bear all associated expenses.
NOTES
[1] In essence but not in fact; existing or resulting in essence or effect though not in actual fact, form or name.
[2] Courtrooms are already being designed to accommodate satellite communication and advanced computer technology. See Mark Curriden, Courtroom of the Future is Here, 81 A.B.A. J. 22 (1990).
[3] The issues surrounding the veracity of a "man's word" have been thoroughly discussed in literature since ancient times. Compare Plutarch, Lives: Lysander 8 (David Brown Book Co. 1989)(n.d.)("He who cheats with an oath acknowledges that he is afraid of his enemy, but he thinks little of God.") with Euripides, Hippolytus l.612 (Oxford University Press 1992)("My tongue swore, but my mind's unsworn.")(n.d.) and William Shakespeare, The Life of Henry the Fifth, II.iii.[50] (Oxford University Press 1995)(1623)("Trust none; For oaths are straws, men's faiths are wafer-cakes, And Hold-fast is the only dog, my duck.").
[4] See supra text accompanying note 1.
[5] Similarly, Florida also recognizes the use of deposition testimony as a permissible alternative to live testimony for otherwise unavailable witnesses. Florida Rules of Criminal Procedure, Rule 3.190(j), specifically provides for a procedure for taking the depositions of unavailable witnesses who reside beyond the territorial jurisdiction of a court, as seen in the present case. These depositions are usually taken by videotape and provide less Confrontation Clause protection than the live satellite testimony because of the absence of the judge and jury. See Christian v. Rhode, 41 F.3d 461 (9th Cir.1994).
[6] See appendix for complete reproduction of the order which we approve of in its entirety.
[7] See In re San Juan Dupont Plaza Hotel Fire Litigation, 129 F.R.D. 424 (D.P.R.1989).