[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 00-12456
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 16, 2001
THOMAS K. KAHN
CLERK

D. C. Docket No. 99-01125-CV-SH

DAVID HARRELL,

Petitioner-Appellant,

versus

ROBERT A. BUTTERWORTH,
Attorney General for the State of Florida,
MICHAEL W. MOORE,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 16, 2001)**

Before ANDERSON, Chief Judge, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

David Harrell, a Florida prisoner, appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On appeal, he argues that his Sixth Amendment right of confrontation was violated when the trial court permitted witness testimony via satellite transmission. For the reasons stated below, we affirm.[1]

## I. BACKGROUND

Harrell was charged with robbery and burglary. The victims, Pedro Mielniczuk and Perla Scandrojlio, a married couple from Argentina, were robbed near the Miami Airport while attempting to return their rental car. The couple was lost and asked a man for directions. After being handed a map, the man reached into the car and grabbed the couple's belongings. Before returning to Argentina, Scandrojlio identified Harrell in a photographic line-up. Harrell, whose fingerprints also matched the prints lifted from the map, was subsequently arrested and tried for the crime.

Prior to trial, the State requested to introduce the two victims' testimony via satellite transmission. The State argued that the victims were unavailable to testify at trial, because Scandrojlio was in poor health and because both victims resided in

---

[1] We decline to address Harrell's ineffective assistance argument, because there is no certificate of appealability with respect to that issue. See McIntyre v. Williams, 216 F.3d 1254, 1256 n.2 (11th Cir. 2000).

2

Argentina and were unwilling to return to Florida. The trial judge agreed to allow the testimony via satellite, over Harrell's objection.

At trial, there were two cameras in the courtroom in Miami; one camera filmed the jury and the other camera filmed the attorneys and the defendant. There was also a screen in the courtroom that allowed those in the courtroom to see each witness in Argentina. In Argentina, there was a camera that filmed the witness and a screen that allowed the witness to see the courtroom in Miami. Thus, the witness could see the defendant and the jury, and the defendant, who was in the courtroom with the judge and jury, could see the witness. The oath was administered to each witness by a deputy clerk in Miami, in the presence of the jury, the judge, and the defendant. The witnesses did not speak English, so an interpreter was used.

During the trial there were some minor technical difficulties. The visual transmission of the witnesses' testimony was not simultaneous with the audio, so there was an approximately one-second delay between what was said and what was seen. There were also two instances in which the end of a question was cut off and one momentary loss of the visual transmission in Argentina. Also, while testifying, Scandrojlio looked to the right of the camera at an individual who could not be seen on the screen. In order to remedy this problem, the trial court had the camera focus on both the witness and the individual, who was the manager of the

broadcast studio in Argentina from which the witnesses' testimony was transmitted.

Harrell was subsequently found guilty and appealed his conviction to the Third District Court of Appeal, which upheld the conviction.  See Harrell v. State, 689 So. 2d 400 (Fla. 3d DCA 1997).  The court held that there was no Confrontation Clause violation, because the two-way transmission provided face-to-face confrontation.  See id. at 404.  The court also found "that the jurors were able to determine the credibility and demeanor of the witnesses testifying, even during the brief period when the transmission was not perfectly synchronized."  Id. at 405. The court also certified the following question to the Florida Supreme Court:

> Does the admission of trial testimony through the use of a live satellite transmission violate the Sixth Amendment to the United States Constitution, . . . where a witness resides in a foreign country and is unable to appear in court?

Id. at 406.

The Florida Supreme Court answered the certified question in the negative and approved the result reached by the Third District Court of Appeal.  See Harrell v. State, 709 So. 2d 1364 (Fla.), cert. denied, 525 U.S. 903, 119 S. Ct. 236 (1998). While the Court concluded that the satellite procedure was not the equivalent of face-to-face confrontation, it held that the procedure qualified as an exception to

4

the Confrontation Clause.  See id. at 1368-70.  The Court began by recognizing public policy reasons justifying an exception to face-to-face confrontation.  First, the witnesses lived beyond the subpoena power of the court and thus there was no way to compel them to appear in court.  The Court found this to be an important consideration, because it was "clearly in [the] state's interest to expeditiously and justly resolve criminal matters that are pending in the state court system."  Id. at 1370.  Second, there was evidence that one of the witnesses was in poor health and could not travel to this country.  Finally, the testimony of these two witnesses was "absolutely essential to this case."  The Court concluded that "[t]hese three concerns, taken together, amount to the type of public policy considerations that justify an exception to the Confrontation Clause."  Id. at 1370.  Next, the Court concluded that the satellite procedure "satisfied the additional safeguards of the Confrontation Clause – oath, cross-examination, and observation of the witness's demeanor" – because the witnesses were placed under oath by a court clerk in Miami; the defendant had an opportunity to cross-examine the witnesses; the jury was able to observe the witnesses as they testified; and the witnesses could see the jury.  Id. at 1371.  The United States Supreme Court denied Harrell's petition for writ of certiorari from the Florida Supreme Court's decision.  See Harrell v. Florida, 525 U.S. 903, 119 S. Ct. 236 (1998).

In 1999, Harrell filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 in which he argued, inter alia, that the trial court's admission of testimony via satellite transmission violated his Sixth Amendment Confrontation Clause rights. On April 4, 2000, a U.S. magistrate judge recommended that the petition be denied. The district court agreed with this recommendation and denied the petition. Harrell then requested a certificate of appealability, but the district court denied the request. This Court, however, issued a certificate of appealability, limited to review of the Confrontation Clause issue.

## II. DISCUSSION

On appeal, Harrell argues that, because there were technical difficulties with the satellite testimony, he was denied the opportunity to cross-examine the witnesses fully, and the jury was unable to determine the witnesses' credibility and demeanor. The technical difficulties consisted of a one-second delay in the synchronization of the audio and visual transmissions, two instances in which the end of a question was cut off, and a momentary loss of picture in Argentina. Harrell argues that the technical difficulties during the testimony were not harmless error and that his conviction should be reversed as a result.

We review a district court's denial of a habeas petition under 28 U.S.C. § 2254 de novo. See Sims v. Singletary, 155 F.3d 1297, 1304 (11th Cir. 1998).

6

Because Harrell filed his federal habeas petition after the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), AEDPA's review provisions apply. See McIntyre v. Williams, 216 F.3d 1254, 1256 (11th Cir. 2000). Under 28 U.S.C. § 2254(d)(1), "we can only reverse the district court if we conclude that the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases. If we cannot so conclude, we must affirm." McIntyre, 216 F.3d at 1257. See also 28 U.S.C. § 2254(d)(1).

Thus, we turn to the Florida Supreme Court's decision to determine if it is contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court.

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Supreme Court has "never held, however, that the Confrontation Clause guarantees criminal defendants the absolute right to a face-to-face meeting with witnesses against them at trial." Maryland v. Craig, 497 U.S. 842, 844, 110 S. Ct. 3157, 3163 (1990) (holding that one-way closed-circuit television testimony by a child witness in an abuse case may be consonant with the Confrontation Clause). Instead, "the Confrontation Clause reflects a preference for

7

face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case." Id. at 849, 110 S. Ct. at 3165 (internal quotations and citations omitted). "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and where the reliability of the testimony is otherwise assured." Id. at 850, 110 S. Ct. at 3166. The requisite finding of necessity is a case-specific one. See id. at 855, 110 S. Ct. at 3169. "The combined effect of [the] elements of confrontation – physical presence, oath, cross-examination, and observation of demeanor by the trier of fact – serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable . . . ." Id. at 846, 110 S. Ct. at 3163.

We conclude that the Florida Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court. As an initial matter, we note that we are bound by the state court's factual determination that, despite technical difficulties during the testimony, the jurors were able to evaluate the credibility and demeanor of the witnesses. Factual findings of state courts are presumed to be correct, and the petitioner can rebut this presumption only by clear and convincing

8

evidence.  See 28 U.S.C. § 2254(e)(1); Mincey v. Head, 206 F.3d 1106, 1130 n.58 (11th Cir. 2000).  The Third District Court of Appeal found that "the jurors were able to determine the credibility and demeanor of the witnesses testifying, even during the brief period when the transmission was not perfectly synchronized." Harrell, 689 So. 2d at 405.  Harrell has failed to rebut the presumption that this factual determination is correct.

The Florida Supreme Court's decision was neither contrary to, nor an unreasonable application of, Supreme Court law as set forth in Craig.  The Florida Supreme Court concluded that public policy considerations justified an exception to face-to-face confrontation and, thus, that the first prong of the Craig analysis was satisfied.  See Harrell, 709 So. 2d at 1369.  In support of this conclusion, the Florida Supreme Court noted that:  the witnesses lived beyond the subpoena power of the court and thus there was no way to compel them to appear; it is in the state's interest "to expeditiously and justly resolve criminal matters that are pending in the state court system;" one of the witnesses was in poor health and could not travel from Argentina to the United States; and the two witnesses were "absolutely essential" to the case.  Id. at 1369-70.

The Florida Supreme Court also concluded that the reliability prong of the Craig analysis was satisfied.  See Harrell, 709 So.2d at 1371.  The Court noted that

9

both witnesses were placed under oath by a court clerk in Miami; Harrell had an opportunity to cross-examine the witnesses; the jury could observe the witnesses as they testified; and the witnesses could see the jury. See id. Cf. United States v. Gigante, 166 F.3d 75, 80 (2d Cir. 1999) (concluding that two-way closed-circuit television testimony "preserved all of [the] characteristics of in-court testimony" where the witness "was sworn; he was subject to cross-examination; he testified in full view of the jury, court, and defense counsel; and [he] gave this testimony under the eye of [the defendant] himself").[2]

### III.  CONCLUSION

Because the Florida Supreme Court's decision – that the witnesses' testimony via two-way, closed-circuit satellite transmission did not violate his

---

[2] In Gigante, the government sought to allow a witness to testify from a remote location due to his illness and infirmity. See 166 F.3d at 79.  The district court permitted him to testify via two-way, closed-circuit television.  During his testimony, the witness was visible on video screens in the courtroom to the judge, the jury, defense counsel, and the defendant. See id. at 80. The witness could see and hear the courtroom participants on a video screen at his remote location.  On appeal, the defendant argued that this procedure denied him of his right to confront the witness in violation of the Sixth Amendment, but the Second Circuit disagreed and concluded that the defendant's confrontation rights had been adequately protected. See id.  The Second Circuit concluded that, because the two-way system used for the witness's testimony "preserved all of [the] characteristics of in-court testimony," the Court did not need "to enforce the Craig standard in this case," because the Craig standard had been "crafted . . . to constrain the use of one-way closed-circuit television, whereby the witness could not possibly view the defendant." Id. at 81.

We need not decide whether the two-way closed-circuit testimony of the witnesses in this case satisfies all of the characteristics of in-court testimony.  However, we do note that the Second Circuit's approach in Gigante supports the Florida Supreme Court's decision that Harrell's constitutional rights were not violated.

constitutional rights – was neither contrary to, nor an unreasonable application of,

Federal law set forth by Supreme Court cases, we

AFFIRM.[3]

---

[3] Harrell's request for oral argument is denied.