[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 24, 2004
THOMAS K. KAHN
CLERK

No. 02-13654

D. C. Docket No. 00-00109 CR-N-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANITA YATES,
ANTON F. PUSZTAI,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Alabama

_____

**(November 24, 2004)**

Before EDMONDSON, Chief Judge, COX, Circuit Judge, and PAUL[*], District Judge.

COX, Circuit Judge:

---

[*]Honorable Maurice M. Paul, United States District Judge for the Northern District of Florida, sitting by designation.

In this appeal, we consider whether the testimony at trial of witnesses by two-way video teleconference from Australia violated the Defendants' Sixth Amendment right to confrontation. Concluding that it did, we reverse and remand for a new trial.

## I. BACKGROUND & PROCEDURAL HISTORY

Anton Pusztai and Anita Yates ("Defendants") were charged with mail fraud, conspiracy to defraud the United States, conspiracy to commit money laundering, and various prescription-drug related offenses in connection with their involvement in the Norfolk Men's Clinic, an internet pharmacy based in Clanton, Alabama.

Before trial, the Government moved to allow two witnesses in Australia to testify at trial by means of two-way video teleconference. The Government stated that Paul Fletcher Christian (who allegedly processed customer internet payments for the Defendants) and Dr. Tibor Konkoly (whose name the Defendants allegedly used on internet drug prescriptions) were both "essential witnesses to the government's case-in-chief," (R.2-248 at 1). The Government noted: "[a]lthough both witnesses are willing to testify at trial via video teleconference, they are unwilling to travel to the United States. Because they are beyond the government's subpoena powers, the government seeks permission for these witnesses to testify through the use of teleconference facilities." (*Id.* at 2.) The Government also proposed moving this part of the trial to the United States Attorney's office for the Middle District of Alabama,

which had teleconferencing equipment that had been tested to the Government's satisfaction with a similar facility in Brisbane, Australia.

Yates responded, arguing that allowing the testimony would violate her Sixth Amendment confrontation right.[1] The district court granted the Government's motion.

Because the courtroom was not outfitted with video equipment, the trial was temporarily moved to the United States Attorney's office for the video teleconference. Counsel for each Defendant objected on Sixth Amendment grounds to the introduction of the testimony. Paul Fletcher Christian and Dr. Tibor Konkoly were sworn in by the Clerk of the federal district court and acknowledged that they understood that their testimony was under oath and subject to penalty for perjury. The Government then questioned Konkoly and Christian by means of two-way video teleconference. Both Defendants, the jury, and the judge could see the testifying witness on monitors, and the witness could see the temporary courtroom in the U.S. Attorney's conference room. Each of the Defendants' attorneys cross-examined both Konkoly and Christian.

---

[1] A search of the record for Pusztai's response is fruitless; the docket sheet for the record on appeal does not contain an entry for Pusztai's response to the Government's motion. But Pusztai apparently submitted a response to the Government's motion, because the Government cites his response in its reply brief. We need not be concerned with whether Pusztai's response preserved the objection because Pusztai objected to the introduction of the testimony at trial and the Government does not contend that the Sixth Amendment confrontation issue is not preserved.

3

The jury found the Defendants guilty of various offenses, and the Defendants appeal.

## II.  ISSUES ON APPEAL AND STANDARD OF REVIEW

We discuss only two of the issues Pusztai and Yates present on appeal.[2] First, we consider whether witness testimony by means of live, two-way video teleconference from Australia violated their Sixth Amendment right to confrontation. Because the admission of testimony by two-way video teleconference presents a mixed question of law and fact, we review de novo the Defendants' claim that their Sixth Amendment rights were violated. *See Lilly v. Virginia,* 527 U.S. 116, 137, 119 S. Ct. 1887, 1900 (1999).

Yates also contends that the district court erred in denying his motion for judgment of acquittal. In reviewing this ruling, we afford no deference to the district court's decision. *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999).

## III.  DISCUSSION

Pusztai and Yates contend that their Sixth Amendment confrontation rights were violated by the admission of testimony by two-way live video teleconference

---

[2]  Pusztai and Yates also contend that the district court erred by: (1) denying their motion for a mistrial based on a Jencks/Brady violation; (2) not allowing Yates to cross-examine Pusztai about a relationship with another woman; (3) denying Pusztai's motion for personal access to computer disks related to his defense; and (4) imposing the sentences that it did. These arguments are meritless and do not warrant further discussion. *See* 11th Cir. Rule 36-1.

with the witnesses in Australia because it was not necessary to further an important public policy and because it was an unreliable form of testimony, and thus violated the rule announced in *Maryland v. Craig*, 497 U.S. 836, 110 S. Ct. 3157 (1990).

The Government argues that in this case testimony by two-way video teleconference comports with the *Craig* rule. In the alternative, the Government urges us to find the *Craig* rule inapplicable and to affirm based on a line of cases interpreting Federal Rule of Criminal Procedure 15 (dealing with depositions) and approving the admissibility of foreign depositions at trial.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This clause, known as the Confrontation Clause, "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S. Ct. 2798, 2801 (1988). But this guarantee is not without exception.

In *Maryland v. Craig*, the Supreme Court upheld, over a defendant's Sixth Amendment challenge, a Maryland rule of criminal procedure that allows child victims of abuse to testify by one-way closed circuit television from outside the courtroom. 497 U.S. at 858, 110 S. Ct. at 3170. In such a scenario, the defendant could see the testifying child witness on a video monitor, but the child witness could

5

not see the defendant. *Id.* at 841-842, 110 S. Ct. at 3161. The defendant contended

that this procedure violated his Sixth Amendment right to confrontation because he

was denied a physical face-to-face encounter with the witness. *Id.* at 842, 110 S. Ct.

at 3161-62. The Supreme Court disagreed, approving Maryland's rule and stating:

"though we reaffirm the importance of face-to-face confrontation with witnesses

appearing at trial, we cannot say that such confrontation is an indispensable element

of the Sixth Amendment's guarantee of the right to confront one's accusers." *Id.* at

849-850, 110 S. Ct. at 3165-66. But the Court held "that a defendant's right to

confront accusatory witnesses may be satisfied absent a physical, face-to-face

confrontation at trial only where denial of such confrontation is necessary to further

an important public policy and only where the reliability of the testimony is otherwise

assured."[3] *Id.* at 850, 110 S. Ct. at 3166.

The Court reasoned:

the right guaranteed by the Confrontation Clause includes not only a
personal examination . . . but also (1) insures that the witness will give
his statements under oath – thus impressing him with the seriousness of
the matter and guarding against the lie by the possibility of a penalty for
perjury; (2) forces the witness to submit to cross-examination, the
greatest legal engine ever invented for the discovery of truth; [and] (3)

_____

[3]     Since *Craig*, many states have passed legislation permitting remote testimony by child
victims, either by closed-circuit television or by videotaped deposition, to protect them from trauma
associated with facing their alleged assailants face-to-face. *See, e.g.,* ALA. CODE § 15-25-2; FLA.
STAT. ANN. § 92.53.

permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

The combined effect of these elements of confrontation – physical presence, oath, cross-examination, and observation of demeanor by the trier of fact – serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable . . . .

*Id.* at 845-46, 110 S. Ct. at 3163 (citations and internal quotations omitted). The video teleconferencing in this case clearly lacked the first element – a witness in the courtroom in the physical presence of the defendant. Because the Defendants were denied a physical face-to-face confrontation at trial, we must ask whether the requirements of the *Craig* rule were satisfied in this case, calling for an exception to the physical presence requirement of the Confrontation Clause. We therefore apply the *Craig* rule.

The Government argues, in the alternative, that we need not apply the *Craig* rule for two reasons: first, because the *Craig* rule applies only to testimony by one-way closed-circuit television; and second, because the videoconference was akin to a Rule 15 deposition taken in a foreign country, which we have approved.

In *United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999), the Second Circuit approved the use of two-way, closed circuit television to present the testimony of a witness from an undisclosed location outside the courtroom. *Id*. at 79. The witness

was participating in the Federal Witness Protection Program and was suffering from the final stages of inoperable cancer. *Id.* at 79. The *Gigante* court ruled that although the "use of remote, closed-circuit television must be carefully circumscribed," *id.* at 80, the defendant's Sixth Amendment right to face-to-face confrontation was not violated. *Id.* at 81-82. The court stated that "a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice," *id.* at 81, and declined to apply the *Craig* standard, reasoning that because the Supreme Court crafted its two-part "standard to constrain the use of one-way closed-circuit television, whereby the witness could not possibly view the defendant . . . , it is not necessary to enforce the *Craig* standard in this case." *Id.* We do not accept this distinction. The *Craig* rule must be satisfied if the prosecution seeks to deny a defendant a face-to-face confrontation with a witness. *See Craig*, 497 U.S. at 850, 110 S. Ct. at 3166.

The Government's reliance on a line of cases approving the admission at trial of deposition testimony is also to no avail; these cases are distinguishable because Rule 15(c) clearly provides a defendant at least an opportunity for a face-to-face encounter at the deposition. Here, the Defendants were given no such opportunity for physical confrontation with the Australian witnesses, and therefore, the deposition cases are inapposite.

In its order, the district court applied the two-part *Craig* rule to permit the Australian witnesses to testify by two-way video teleconference before the court in the United States Attorney's Office in Montgomery, Alabama.[4]

As to the first *Craig* requirement, the district court ruled that the testimony was necessary to further an important public policy. The court accepted the Government's contention that the testimony would serve the "important public policy of providing the fact-finder with crucial evidence," (R.3-314 at 19), and found that "the Government also has an interest in expeditiously and justly resolving the case."[5] (*Id.* at 22.)

We accept the district court's rationale that the witnesses were necessary to the prosecution's case on at least some of the charges, as the record supports the

---

[4] The Defendants also objected to conducting the video teleconference in the United States Attorney's office. While the Defendants have abandoned this objection on appeal, we remain concerned with the shift of a trial to a United States Attorney's office.

[5] The district court also noted that "in today's world of the internet and increasing globalization, more and more situations will arise in which witnesses with material knowledge are beyond the subpoena power of the Court." (R.3-314 at 22.) Because this finding regarding the future of telecommunications was not case-specific, we do not consider it. *See Craig*, 497 U.S. at 855-56, 110 S. Ct. at 3169 (requiring case-specific findings).

On April 29, 2002, the Supreme Court transmitted to Congress proposed amendments to the Federal Rules of Criminal Procedure. The Court declined to transmit a proposed new Rule 26(b) that would have allowed for a two-way video teleconferencing under certain circumstances. Justice Scalia filed a statement explaining his own objections to the proposed rule, remarking that the proposed amendments were "contrary to the rule enunciated in *Craig*" in that they would not limit the use of remote testimony to "instances where there has been a 'case-specific finding' that it is 'necessary to further an important public policy.'" *Order of the Supreme Court*, 207 F.R.D. 89, 93 (2002) (citation omitted).

Government's assertion that the testimony was crucial to a successful prosecution of the Defendants and aided expeditious resolution of the case. Defendant Pusztai concedes "[t]hat Dr. Konkoly was a significant witness for the Government . . . ." *Appellant's Br.* at 28.

But the prosecutor's need for the testimony in order to make a case and expeditiously resolve it are not public policies that are important enough to outweigh a defendant's right to confront an accuser face-to-face. Comparing the public policy behind Maryland's rule – protection of certain children from trauma caused by confronting their attacker – with the policies offered in this case – providing the fact-finder with crucial prosecution evidence and expeditious resolution of the case – leaves us unconvinced that the policy justification in this case meets *Craig's* standard for an important public policy.

The district court made no findings of fact that would support a conclusion that this case is different from any other criminal prosecution in which the Government would find it convenient to present testimony by two-way video teleconference. All criminal prosecutions include at least some evidence crucial to the Government's case, and there is no doubt that many criminal cases could be more expeditiously resolved were it not necessary for witnesses to appear at trial. *See Craig*, 497 U.S. at 867, 110 S. Ct. at 3175 ("The State's interest here is in fact no more and no less

than what the State's interest always is when it seeks to get a class of evidence admitted in criminal proceedings: more convictions of guilty defendants. That is not an unworthy interest, but it should not be dressed up as a humanitarian one.") (Scalia, J., dissenting). If we were to approve introduction of testimony in this manner, on this record, every prosecutor could argue that providing crucial prosecution evidence and expeditious resolution of the case are important public policies that support the admission of testimony by two-way video teleconference. *See, e.g, Remote Testimony – A Prosecutor's Perspective*, 35 U. Mich. J. L. Reform 719 (2002).

The Sixth Amendment demands more. "The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts." *Crawford v. Washington*, __ U.S. __, 124 S. Ct. 1354, 1365 (2004). We therefore hold that providing the fact-finder with crucial prosecution evidence and expeditious resolution of the case, on the record before us, are not important public policies that justify the denial of actual confrontation between witness and defendant.[6]

---

[6] Our decision in *Harrell v. Butterworth*, 251 F.3d 926 (11th Cir. 2001) is not to the contrary. In *Harrell*, we reviewed a habeas corpus case involving a Florida state trial court's admission of testimony by means of two-way video teleconference with Argentina. In the state proceedings, the Florida appellate courts applied the two-part *Craig* rule and approved the introduction of witness testimony by this means. *Id.* at 929. At issue in the federal case was whether the testimony by two-way teleconference violated the petitioner's Sixth Amendment right to confrontation. *Id.* Because it was a habeas case, our review of the petition was constrained by 28 U.S.C. § 2254(d)(1) to asking whether the remote testimony was contrary to, or an unreasonable

11

Since we conclude that the admission of this testimony fails the public policy prong of the *Craig* rule, we need not discuss *Craig's* second requirement - that the witness's testimony be reliable.

Finally, we turn to Yates's contention that the district court erred in denying her motion for judgment of acquittal. Yates's motion for judgment of acquittal was grounded on the assertion that the evidence admitted at trial was insufficient to support convictions. Similarly, Yates argues on this appeal that the evidence "introduced at trial" was insufficient to support her convictions. (Appellant Br. at 30) Having reviewed the evidence, we find it sufficient to support Yates's convictions. Our conclusion is buttressed by the fact that Yates testified at trial, and the jury obviously rejected her testimony.[7] *See United States v. Brown*, 53 F.3d 312, 314

application of, clearly established federal law, as determined by the Supreme Court. *Id.* at 930. As the Supreme Court had not ruled on the constitutionality of allowing trial testimony by two-way closed circuit television or satellite video teleconferencing, we found no violation of clearly established law. *Id.* at 931-932. But in this case, our conclusion that a similar procedure violated the Defendants' right to confrontation results from de novo review.

[7] Yates does not contend that we should ignore evidence admitted in violation of the confrontation clause in determining the sufficiency of the evidence. We need not decide in this case, therefore, whether an argument that we should consider only properly admitted evidence, if made, would be meritorious. *See United States v. Khoury*, 901 F.2d 948, 961 (11th Cir. 1990) ("Although we are reversing Kluver's conviction because of harmful constitutional error, nonetheless we must still rule on Kluver's sufficiency argument because if the *properly admitted evidence* presented by the government was insufficient to carry the burden of proof, then Kluver's retrial would be prohibited by the double jeopardy bar.") (emphasis added). *But see Lockhart v. Nelson*, 488 U.S. 33, 109 S. Ct. 285, 291 (1988) ("[A] reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause.") *United States v. Diaz*, 300 F.3d 66, 77 (1st Cir. 2002) (In considering a motion for judgment of acquittal,

(11th Cir. 1995)( "[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt.")  Thus, retrial of Yates is not barred because we reverse for trial error rather than on insufficiency of the evidence grounds.  *See United States v. Scott*, 437 U.S. 82, 90-91, 98 S. Ct. 2187, 2193-94 (1978) ("The successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge.")(citation omitted).

---

"we must examine 'all the evidence submitted to the jury, regardless of whether it was properly admitted.'") *United States v. Bruno*, 383 F.3d 65, 90 (2nd Cir. 2004) (Although the defendant's plea allocution was improperly admitted, "we must consider it as having been properly admitted for the purpose of assessing the legal sufficiency of the evidence to support a criminal conviction.") *United States v. Mackins*, 32 F.3d 134, 138 (4th Cir. 1994) ("[S]ufficiency of the evidence review requires the district court to consider *all* of the evidence admitted at trial.") (emphasis in original). *United States v. Miller*, 146 F.3d 274, 280 (5th Cir. 1998) ("In conducting a sufficiency review under such circumstances, we consider all of the evidence that was before the jury - including evidence that was erroneously admitted.") *United States v. Quinn*, 901 F.2d 522, 530 (6th Cir. 1990) ("The question presented here, then, is whether we may consider erroneously admitted testimony, as well as the properly admitted evidence, in reviewing the sufficiency of the evidence.  This issue has been recently decided in the affirmative by the Supreme Court. . .") *Palmer v. Grammer,* 863 F.2d 588, 593 (8th Cir. 1988) ("[T]he Double Jeopardy clause does not foreclose a retrial in this situation because the reviewing court must look to *all* the evidence, not just the legally admitted evidence, to determine whether a retrial is permitted.") (emphasis in original) *United States v. Vizcarra-Martinez*, 66 F. 3d 1006, 1009 (9th Cir. 1995) ("We first must evaluate whether there was sufficient evidence to convict Vizcarra-Martinez.  In doing so, we must assume that the evidence at trial was properly admitted.") *United States v. Wood*, 958 F.2d 963, 970 (10th Cir. 1992) (The "reviewing court should consider erroneously admitted evidence in determining whether double jeopardy bars retrial due to insufficient evidence at first trial.")  *United States v. Alexander,* 331 F.3d 116, 128 (D.C. Cir. 2003) ("[W]e must consider all admitted evidence - whether admitted erroneously or not - in reviewing the sufficiency of the evidence.")

13

## V.  CONCLUSION

Because the admission of this live, two-way video teleconference testimony violated the Defendants' Sixth Amendment confrontation rights, we reverse and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

EDMONDSON, Chief Judge, concurring in the result:

I write separately mainly to stress my doubts that the witnesses in Australia were testifying under oath at all.

The Constitution calls for sworn testimony in criminal trials. Apart from the Constitution, Fed.R.Evid. 603 says: "Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." I question whether the "oath" in this case was valid for the witnesses in Australia.

In our case, Australian witnesses in Australia were sworn in per television by the district court clerk in Alabama. The United States says that this novel oath-taking was meaningful because perjury is an extraditable offense in the treaty between the United States and Australia. But to say perjury is illegal and an extraditable offense does not end the issue, for perjury can only be committed when a person has been properly placed under oath.[1] The correct inquiry, first, is whether

---

[1]See 18 U.S.C. § 1621:
Whoever--

> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter

15

the court clerk in Alabama is a competent officer to give a valid, meaningful oath when the oath-taker is a foreign national reciting the oath in a foreign country.[2] To awaken a witness's conscience and to impress upon him his duty, the oath must be valid and meaningful. Very little is impressed upon a witness sitting in a foreign country looking at an American trial on a video screen when the screen and witness are in a room thousands of miles away from the trial and on a different continent: far away from the defendants, judge, jury, clerk, and counsel.

---

which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

[2]Defendants did not focus on the ineffectiveness of the oath-giver; so this issue is not necessarily dispositive here. But it is an issue that causes grave concern to me, and today's Court opinion leaves the issue open for another case in which the point is argued hard. Without citing authority, defendant Yates, in her appellant brief, does say the two Australian witnesses "were not properly sworn before an officer of this or any court, as they were outside of the power of this Court to be properly punished or held in contempt for perjurious testimony." Pusztai said the oath was not meaningful because even if perjury is an extraditable offense, there is little likelihood that the government would actually indict and extradite their own witness who testified as desired and helped the government successfully obtain a conviction.

16

While the law generally says that the oath may be given by a justice or judge of the United States, or by the clerk of the court or his deputies, 28 U.S.C. §§ 459, 953, this statement is not plainly sufficient to cover the anomaly presented by this case: Congress did not address or seem to plan for foreign witnesses to testify at a United States trial at the same time the witness remained in a foreign country. When we look at statutes where Congress plainly did envision someone taking an oath while in a foreign country, we see additional requirements to make the oath meaningful. In the light of the Constitution's own demand for a meaningful oath, I believe that requirements along the line of those set out by statutes probably apply -- as a matter of constitutional law -- in a criminal trial too.

For example, in applying for a patent, an applicant must make a valid oath that he believes himself to be the original and first inventor of the thing he is seeking to patent. In saying who is authorized to give the oath, 35 U.S.C. § 115 provides, in relevant part, this process:

> Such oath may be made before any person within the United States authorized by law to administer oaths, or, when, made in a foreign country, before any diplomatic or consular officer of the United States authorized to administer oaths, or before any officer having an official seal and authorized to administer oaths in the foreign country in which the applicant may be, whose authority is proved by certificate of a diplomatic or consular officer of the United States, or apostille of an official designated by a foreign country which, by treaty or convention, accords like effect to apostilles of designated officials in the United States, and such oath shall be valid if it complies with the laws of the state or country where made. . . . For purposes of this section, a consular officer

17

shall include any United States citizen serving overseas, authorized to perform notarial functions pursuant to section 1750 of the Revised Statutes, as amended (22 U.S.C. 4221).[3]

I doubt that a district court clerk in Alabama has the legal power to place someone in Australia under a meaningful oath: the United States government has not argued in this case that the Alabama federal court clerk was authorized to administer oaths <u>in</u> Australia. As the statutes show, it is widely accepted that the oath (if it is to serve its purpose) must be given by a properly empowered person in the same place (or at least in the same country) as the witness wishing to take the oath. This idea --

---

[3] 22 U.S.C. § 4221, the statute for depositions and notarial acts taken abroad and allowing punishment for perjury, says these things about oaths:

> Every secretary of embassy or legation and consular officer is authorized, whenever he is required or deems it necessary or proper so to do, at the post, port, place, or within the limits of his embassy, legation, or consulate, to administer to or take from any person an oath . . . . At any post, port, or place where there is no consular officer, the Secretary of State may authorize any other officer or employee of the United States Government who is a United States citizen serving overseas, including any contract employee of the United States Government, to perform such acts, and any such contractor so authorized shall not be considered to be a consular officer. Every such oath . . . before any such officer, when certified under his hand and seal of office, shall be as valid, and of like force and effect within the United States, to all intents and purposes, as if . . . before any other person within the United States duly authorized and competent thereto. If any person shall willfully and corruptly commit perjury, or by any means procure any person to commit perjury in any such oath . . . within the intent and meaning of any Act of Congress now or hereafter made, such offender may be charged, proceeded against, tried, convicted, and dealt with in any district of the United States, in the same manner, in all respects, as if such offense had been committed in the United States, before any officer duly authorized therein to administer or take such oath . . .and shall be subject to the same punishment and disability therefor as are or shall be prescribed by any such Act for such offense . . . .

the idea of taking an oath before, that is, actually in the presence of, a competent officer -- goes back to the desire to impress the significance of that oath upon the witness.

Courts must take the idea of witnesses testifying under oath seriously. It is hard to feel the significance of an oath, when a person in one sovereign country is just looking at a television screen at an image of a court clerk representing a foreign government a very long airplane ride away and in an altogether different sovereign country. I mistrust the notion that many people think that talking to a television (especially given the other circumstances here) counts for much. So, I worry that the Constitution's requirement that a witness in a criminal trial make his statements under a meaningful oath was not met in this case.

Pusztai does not challenge the sufficiency of evidence. Yates does. Apart from the testimony of the witnesses in Australia, I believe that sufficient evidence -- particularly given Yates's own testimony -- is in the record to support her conviction. For background, see United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). So, a new trial can be held.