[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-15355
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 3, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 97-01369-CV-JAL

FRANCISCO FUSTER-ESCALONA,

Petitioner-Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,
James Crosby,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 3, 2006)

Before DUBINA, HULL and RONEY, Circuit Judges.

PER CURIAM:

This is an appeal of the denial of petitioner Franscico Fuster-Escalona's

28 U.S.C. § 2254 petition for writ of habeas corpus.  After a jury trial Fuster was

convicted of several counts of sexual battery and lewd and aggravated assault on

children.  The appeal raises an issue concerning testimony by closed circuit television and two claims that alleged newly discovered evidence rendered trial evidence unreliable.  We affirm.

Over the course of a four-week jury trial in late 1985, Florida state prosecutors presented evidence showing that Fuster and his wife, Ileana, operated a child babysitting service.  In October 1985, the Florida state jury convicted Fuster of six counts of sexual battery on a child under the age of twelve, seven counts of lewd assault, and one count of aggravated assault for which he received a sentence of six consecutive terms of life imprisonment with minimum mandatory terms of 25 years for the sexual batteries, plus concurrent terms of 15 years' imprisonment on each of the remaining counts.  The judgment and sentence were affirmed by the Florida Third District Court of Appeal.  *See Escalona v. State*, 588 So. 2d 337, 337 (Fla. 3d DCA 1991).  A motion for post-conviction relief was denied by the state trial court and subsequently affirmed by the Florida Third District Court of Appeal.  *See Fuster v. State*, 664 So. 2d 18, 20 (Fla. 3d DCA 1995).

On April 22, 1997, Fuster filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Florida, raising seventeen claims.  The magistrate judge issued a 124-page report and recommendation,

carefully addressing each of these claims and recommending each be denied.  The district court adopted the magistrate's report and recommendation in a thorough 58-page opinion and denied the petition.

The district court granted a certificate of appealability as to three of the claims raised in Fuster's petition, which we will address *seriatim* after briefly setting forth the legal standard for reviewing claims for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

Section 2254(d) of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) permits federal habeas corpus relief for a claim adjudicated on the merits in state court only where that state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (explaining that "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law if the state court decides a case differently than this Court has on a set of materially indistinguishable facts"); *Crawford v. Head*, 311 F.3d 1288,

3

1295 (11th Cir. 2002) (noting that "both the district court's review and our review is greatly circumscribed and is highly deferential to the state courts"). The Supreme Court has explained that AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

## I.

**His right to a fair trial was violated when the court allowed four prosecution witnesses to testify by closed-circuit television without a "cause specific" finding of necessity.**

Over Fuster's Sixth Amendment Confrontation Clause objection, four children-victims (who were five or six years old at the time of trial) testified through the use of two-way closed circuit television. Under this system, Fuster and the jury remained in the courtroom, while the children, judge, and attorneys were situated in the judge's chambers. Because the television system was two-way, Fuster was able to view the witnesses from a monitor placed in the courtroom as they testified, while the witnesses viewed Fuster on the monitor placed in the judge's chambers. The child witnesses were contemporaneously cross-examined by Fuster's attorney.

4

Fuster asserts that the trial court erred by failing to make "case-specific findings" prior to permitting these four children to testify via two-way closed circuit television, which he argues violated his rights under the Confrontation Clause of the Sixth Amendment. He cites *Maryland v. Craig*, 497 U.S. 836 (1990), contending – as he had unsuccessfully argued on direct appeal to the Florida Third District Court of Appeal – that the trial judge was required to make a specific finding as to each child that he would suffer trauma such that he would be unable to communicate directly as a result of being in the presence of the defendant.

The district court did not err by denying Fuster relief on this ground. Fuster has failed to demonstrate that the state appellate court's rejection of the Confrontation Clause argument was either contrary to, or an unreasonable application of, clearly established federal law. *See Harrell v. Butterworth*, 251 F.3d 926, 930-32 (11th Cir. 2001).

*Craig* is distinguishable from the facts and circumstances of this case. *Craig* involved a six-year old girl testifying in a child abuse case via a *one-way* closed circuit television. That is, unlike here, the testifying child *never saw* the defendant (in person or via a video monitor) when she testified. The *Craig* Court reiterated the purposes of the Confrontation Clause, including the importance of

5

the witness seeing the defendant as she testified, and reasoned that case-specific findings were necessary when those purposes were not met.  *See Craig*, 497 U.S. at 851, 855 (listing the elements of the confrontation right, including presence, oath, cross-examination, and observation of demeanor by the trier of fact, and noting that Maryland's statutory procedure *preventing* a child witness from seeing the defendant *as he or she testifies* was permissible so long as the trial judge made case-specific finding); *see also Harrell*, 251 F.3d at 930-31 (discussing *Craig*, explaining "the elements of confrontation," and denying § 2254 relief on that ground).

Thus, the Florida Third District Court of Appeal's decision upholding Fuster's convictions and sentences on this ground does not contradict *Craig*, nor has Fuster cited any other Supreme Court law that the Florida appellate court's opinion contradicted.  It was thus not contrary to, or an unreasonable application of, established federal law to hold that no case-specific findings were required prior to the four children testifying via two-way closed television at Fuster's trial.  Accordingly, we affirm the district court's denial of Fuster's claim on this ground.

## II.

**His right to a fair trial was violated where newly discovered scientific evidence and facts show that his convictions were obtained through a highly unreliable gonorrhea test administered to his son.**

6

At Fuster's trial, the prosecution presented the testimony of Fuster's son, Noel, as well as Fuster's wife, Ileana, explaining that Fuster had sexually abused Noel and that Noel had contracted gonorrhea due to inappropriate sexual contact with Fuster. The prosecution also presented the results of a throat culture conducted on Noel, which tested positive for gonorrhea.

Alleging a general due process violation, Fuster contends that "newly discovered" evidence exists suggesting that the methodology utilized by the State's laboratory to test for the presence of gonorrhea in his son was unreliable because the methodology exhibited a high false positive rate. He does not argue that his son's test was actually negative but instead that had the failure rate of this test been known at the time of trial, the results of that test would never have been admitted. In essence, he contends that he would have been found innocent by the jury because the positive test results was the only "objective piece of evidence" that he had sexually abused a child.

The district court did not err by denying Fuster relief on this ground. Fuster has failed to assert a cognizable federal constitutional claim under the facts and circumstances of this case. Without a cognizable federal constitutional claim, there can be no federal habeas corpus relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) (explaining that the "'the existence merely of newly discovered

7

evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus' . . . [because] federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact"); *see also Swindle v. Davis*, 846 F.2d 706, 707 (11th Cir. 1988) (denying federal habeas corpus relief where petitioner presented evidence not previously known to prosecutors at his trial that someone else committed manslaughter).

Fuster was not convicted solely on the evidence of the gonorrhea test. As the district court properly noted, this evidence merely corroborated other evidence that Fuster had sexually abused his son.

### III.

**Newly-discovered evidence and facts demonstrate that his convictions were obtained through totally unreliable testimony of children obtained in extremely coercive interviews, and that he is actually innocent.**

At trial, parents of several of the children who utilized Fuster's babysitting service testified that their children exhibited severe behavioral and physical problems shortly after attending this service. As part of an investigation conducted by the Dade County State Attorney's office, the children were interviewed by Drs. Joseph and Laurie Braga ("the Bragas"), both psychologists. The Bragas testified as to their conclusions derived from these investigatory

interviews with the children. Defense counsel thoroughly cross-examined the Bragas as to the potential distorting effect of, among other techniques, using leading questions when interviewing children. Defense counsel also called a psychiatrist, Dr. Lee Coleman, who gave a lengthy critique of the interview techniques utilized by the Bragas. Dr. Coleman testified that he had believed that the techniques were abusive and manipulative, resulting in an extraction of information from the children that was completely unreliable because the interviewers had overwhelmed the children with their own biases.

Fuster contends that his convictions were based upon unreliable testimonies of the child victims which, he argues, were obtained through "coercive" interviews conducted by the Bragas, violating his due process rights. He offers what he claims to be "newly discovered" evidence that the interviewing techniques utilized by the state's psychologists to interview the children may have distorted and influenced the children's recollection of the transpired events.

The district court did not err by denying Fuster relief on this ground. Fuster has failed to demonstrate that the Third District Court of Appeal's rejection of his "claim of newly discovered evidence" was either contrary to, or an unreasonable application of, clearly established federal law. *Fuster*, 664 So. 2d at 19. The Florida appellate court held that "this is a matter which was already litigated at

9

trial," was "not cognizable in post-conviction proceedings unless emanating from the Supreme Court of Florida or the United States Supreme Court," and was not newly discovered evidence under Florida law. 664 So. 2d at 19 (citing *Witt v. State*, 387 So. 2d 922 (Fla. 1980)). Fuster fails to cite, nor have we found, any established Supreme Court law that the state court's ruling violated.

Fuster has failed to assert a *cognizable* federal constitutional claim under the facts and circumstances of this case. Without such, there can be no federal habeas corpus relief. *See Herrera*, 506 U.S. at 400. Although Fuster makes the general argument that his due process rights were violated, this Court has held that coerced testimony violates a defendant's due process rights "where government involvement in the investigation and prosecution of the crime is so outrageous that it violates 'fundament fairness, shocking to the universal sense of justice.'" *Wilcox v. Ford*, 813 F.2d 1140, 1147 (11th Cir. 1987).

Fuster has failed to meet this rigid standard in order to merit habeas corpus relief. *See, e.g., Wilcox*, 813 F.2d at 1148-49. Fuster's counsel thoroughly cross-examined the prosecution's witnesses who had interviewed the child victims, disputing the interviewing techniques utilized by them. The defense presented the testimony of a psychiatrist, Dr. Coleman, who had opined as to the effect of the interviewing techniques utilized on the children. This evidence was before the

10

jury. The evidence Fuster now considers "newly discovered" are studies conducted *since* his trial as to the effect of certain interviewing techniques on children, which appears to be in an effort *to bolster* Dr. Coleman's testimony. The consideration of this evidence is improper, and Fuster has nonetheless failed to demonstrate how the admission of this evidence violated his due process rights to warrant federal habeas corpus relief.

The district court's denial of Fuster's petition for a writ of habeas corpus is therefore **AFFIRMED.**